[No. 4126–II. Division Two. February 19, 1981.]

THE STATE OF WASHINGTON, *Appellant,* v. KENNETH A. CARNER, *Respondent.*

*Curtis M. Janhunen, Prosecuting Attorney,* and *John C. Strzynski, Deputy,* for appellant.

*Ralph I. Thomas,* for respondent.

PEARSON, J.—The State appeals an order suppressing evidence seized by the police from defendant's person during the booking procedures at the police station.

Defendant was a 17–year–old juvenile at the time he was arrested. Following a suppression hearing, the trial court, pursuant to CrR 3.6, entered detailed findings of fact and conclusions of law and granted defendant's motion to suppress the drugs.

■ A threshold question is what weight we will give to the findings of disputed facts made by the trial court. Our conclusion is that when the State appeals from an order suppressing evidence there is no "fundamental constitutional right" involved which requires an independent evaluation of the evidence. *See State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980). Accordingly, we hold that in such cases we will apply the usual substantial evidence test to evaluate those disputed findings and defer to the trial court's superior position to assess credibility matters. We will then determine whether the findings, if properly justified by the evidence, will support the trial court's conclusion that an unconstitutional search was made.

We set forth verbatim the trial court's findings.

### I—Undisputed Facts

(a) The defendant came to the attention of the officers Timmons and Bens of the Aberdeen Police Department at approximately 0050 hours on September 27, 1978 in the City of Aberdeen, Grays Harbor County, Washington. The defendant was at that time operating a motorcycle on the streets of Aberdeen.

(b) The officers believed the defendant was speeding and commenced to pursue him. The defendant stopped and let a passenger off his motorcycle and then proceeded to attempt to escape apprehension. The police, after a chase of a few blocks, apprehended the defendant and searched him at the site of the apprehension.

(c) The officers then arrested the defendant and took him to the Aberdeen Police Station where they decided to release him to his mother.

(d) The defendant was issued a citation for switching license plates and having no driver's license.

(e) The defendant was a minor at the time of the incident.

(f) Officer Timmons then called the defendant's mother to pick up the defendant at the Police Station.

(g) While Officer Timmons was making the call, Officer Bens searched the defendant by asking him to empty his pockets. The defendant complied.

(h) Officer Bens did not testify.

## II—DISPUTED FACTS

(a) Officer Timmons stated the officers intended to bring additional charges for speeding and evasion against the defendant in juvenile court. These charges were never brought against the defendant.

(b) After emptying his pockets, the defendant contends the booking procedure was completed; however, Officer Timmons testified that there was an additional search as a part of the booking procedure and that is to search the defendant's person in the booking area.

(c) The defendant testified that after emptying his pockets, Officer Bens showed the defendant a citation with 4 or more charges on it with a large amount of bail. The defendant then made oral remarks to Officer Bens which precipitated another search of the defendant in the booking area.

(d) The defendant testified that during this search Officer Bens pushed the defendant's face against a metal screen in the booking area and the defendant's lip was cut and that in this third search Officer Bens found a vial containing white powder on the defendant's person.

(e) Officer Timmons testified that the third search of the defendant was a part of the booking procedure.

(f) The defendant's mother testified that she noticed a cut on the defendant's lip when she appeared at the Police Station to pick up the defendant in accordance with Officer Timmons' call.

## III—FINDINGS AS TO DISPUTED FACTS

(a) The officers intended to bring additional traffic charges against the defendant in juvenile court, but these charges were never filed.

(b) The booking procedure ended with emptying the defendant's pockets and the issuance of the citation. The officers had decided to release the defendant to his mother.

(c) After the defendant made oral statements to Officer Bens, the defendant was again placed in custodial arrest and searched for the third time.

The trial court concluded that since the custodial phase of defendant's arrest had terminated after defendant emptied his pockets and the decision was made to release him to his mother, the "third" search was constitutionally unreasonable. We agree.

We note the crucial finding that the booking procedure had ended prior to the body search that disclosed the cocaine is supported not only by defendant's testimony, but inferentially by Officer Timmons' description of the process by which juveniles are usually handled when they are arrested for a minor traffic offense.[1]

It further appears from our review of the record and in particular from the trial court's oral comments that the judge was persuaded that Officer Bens, who conducted the body search, did so not as a part of a routine booking procedure, but because the defendant had argued with him when additional charges were added to those ordinarily made. It also appears that the trial court believed Officer Bens, who did not testify, had "roughed up" the defendant during the search.

The State argues (1) the custodial arrest was lawful, and (2) the cocaine was discovered as a result of a lawful booking search incident to a lawful arrest. Defendant asserts alternatively that either the original custodial arrest was unlawful under the recent ruling of *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978), or even if the arrest was lawful, once the police had terminated the "custodial phase" a warrantless search thereafter would be unreasonable if made solely because of comments defendant made to the booking officer.

Both parties have dealt extensively in their briefs with whether or not *Hehman* is controlling. However, we must agree with the State's contention that *Hehman* is not controlling. That case dealt with the propriety of a custodial arrest for a minor traffic violation. The court held that as a matter of public policy the custodial arrest for a minor traffic violation (defective taillight and expired driver's license) was impermissible if defendant signed a promise to appear as provided in RCW 46.64.015.

---

[1]We agree with the State that Officer Timmons also testified that the booking procedure had not been completed until after the body search was made.

The same considerations are not present in this case. Here defendant, speeding on a motorcycle, tried to evade the police by racing his vehicle on city streets. Not only was he a minor, but he had no driver's license. We hold this was more than a minor traffic violation, and that a custodial arrest was warranted. However, such a holding does not compel a reversal of this case under the trial court's findings; we think *Hehman* is instructive, if not controlling, on the issue of whether the "third" search was reasonable in the circumstances.

 We start with the general proposition that subject to only a few carefully drawn and jealously guarded exceptions, a warrantless search is per se unreasonable under the Fourth Amendment. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978). Where such a search and seizure is conducted outside the judicial process and without prior sanction by a neutral and detached magistrate, the State has the burden of justifying the search under one of the exceptions to the warrant requirement. *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979).

 One exception to the warrant requirement is that warrantless searches may be made incident to lawful custodial arrests. *United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973). A further exception is that once an accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may be lawfully searched and seized without a warrant, even though a substantial period of time elapsed between the arrest and the administrative processing. *United States v. Edwards,* 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234 (1974).

Although a search incident to incarceration following a lawful arrest may fall within an exception to the general requirement of a warrant, such a search is not excused from the constitutional requirement that it be a "reasonable"

search. *See United States v. Edwards, supra; State v. Marcum,* 24 Wn. App. 441, 601 P.2d 975 (1979). Applying these general principles to the trial court's factual findings, we hold those findings support a conclusion that the final body search was unreasonable in view of all the circumstances.

The crucial finding is that before Officer Bens conducted the challenged search, the officers had determined that the defendant would not be detained, but released to his mother. At this stage, he had already been frisked at the scene and asked to empty his pockets. There was no danger of weapons, or that he might possess evidence relevant to the crime for which he was arrested. The further danger that the defendant might possess items which would aid in his escape or carry contraband or drugs to his jailmates would exist only if the police intended to detain him. Once the administrative decision was made to release him without further detention, these dangers ceased to exist and gave the police no reasonable basis for a detailed body search. In *United States v. Edwards, supra,* the Supreme Court quoted with approval at page 808 a statement made by the Court of Appeals for the First Circuit in *United States v. DeLeo,* 422 F.2d 487, 493 (1st Cir. 1970):

> While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.

(Footnote omitted.) We conclude the trial court was correct in determining that once defendant's juvenile status was determined and a decision to release him made, any further intrusion on the privacy of his person in addition to those already made was unreasonable and not necessitated by any exigencies which further detention might have required.

Also it is obvious from our review of the trial court's oral and written findings that the body search was not motivated by any customary police procedures, but carried out

in retaliation for defendant's expressed displeasure over the number of additional citations he was to receive. Defendant's testimony to this effect was not refuted. Officer Bens was not called to testify. Thus there is persuasive factual support for the conclusion that the final search was unreasonable.

The order suppressing evidence is affirmed.

PETRIE, A.C.J., and PETRICH, J., concur.