[No. 20819-5-I. Division One. March 20, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER JOSEPH STORTROEN, *Appellant*.

WILLIAMS, J. Pro Tem., dissents by separate opinion.

*Gene M. Grantham,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Celeste Stokes* and *Rebecca Roe, Deputies,* for respondent.

PEKELIS, J.—Walter J. Stortroen appeals from his conviction of one count of violating the Uniform Controlled Substances Act, RCW 69.50.401(a), contending that the trial court erred in failing to suppress certain evidence. We agree and reverse, dismissing the charges.

On February 25, 1987, at about 12:30 a.m., Washington State Patrol Trooper Lance Fry stopped a vehicle on Interstate 5 for a routine speeding violation of 5 to 10 m.p.h. over the limit. The driver, Edward Kincaid, pulled over properly to a point completely off the roadway and onto a shoulder that the trooper described was "[a]s safe as any." Kincaid was unable to produce a driver's license. By radio check, the trooper determined that Kincaid's license had been revoked for refusing to submit to a Breathalyzer test.

Trooper Fry directed Kincaid to leave his vehicle and frisked him, removing some darts from Kincaid's jacket, which the trooper regarded as potential weapons. Fry then placed Kincaid in the backseat of the patrol vehicle and advised him that he was under arrest for driving without a valid license. Fry determined that the passenger, Walter J.

Stortroen, did not have a driver's license and therefore could not drive the car away. Fry explained to Kincaid that his car would be impounded and asked Kincaid which tow company he wanted to use. Kincaid indicated he wanted an AAA tow and Fry used his radio to request one for him. Fry then informed Kincaid that he would have to inventory his vehicle pursuant to the impound.

Fry considered no other alternatives to impound, such as having the car towed to some other location or allowing Kincaid to make arrangements to have it picked up by the friend whom Kincaid claimed was the co–owner. Fry testified that the vehicle did not impede traffic, but he believed it might be a distraction to other drivers if it were left on the shoulder.

Fry testified that his only purposes in deciding to inventory the vehicle were to protect Kincaid's goods and to prevent any later claims of lost articles. However, he conceded that he could have permitted Kincaid to sign a standard form release absolving the Washington State Patrol of liability for property loss. If he had done so, the car could have remained on the shoulder and an inventory would not have been necessary.

Trooper Fry testified it was not his intent to search for weapons or contraband. On redirect examination he testified:

Q. And once you had discovered darts on Kincaid, defendant Kincaid, did you think that there may be other possible types of things in the car that may be weapons that you might have been looking for?
A. The thought didn't occur to me at that point.
Q. Was there any other reason then you were looking in the car besides inventory, the reasons you just outlined?
A. I can't—I don't recall any right now.

At that point in time, according to Fry, his intentions were to issue Kincaid a citation, drive him to the nearest convenient spot and release him. He informed the passenger, Stortroen, that the car would be impounded and that, if he wished, he could ride with the tow truck.

In the course of the inventory search, Fry discovered cocaine in an unlocked center console. He immediately suspended the search, handcuffed both Stortroen and Kincaid and advised them they were under arrest for violation of the Uniform Controlled Substances Act. Another trooper arrived, who asked Stortroen if he had anything they "should know about", to which Stortroen replied that he had three packages on his person. The other trooper searched him, removed two of the packages and asked him what they were. Stortroen replied, "cocaine." Fry testified that this search of Stortroen was incident to his arrest. The second trooper then returned to her vehicle to answer a radio call, and while Stortroen and Fry were waiting outside, Stortroen said, "[t]he other stuff in the car is mine, too." At that time, Stortroen was given *Miranda*[1] warnings. A request for written consent to search Stortroen's suitcase and Kincaid's vehicle was refused by each.[2] The AAA tow truck was dismissed and a police tow truck was called to tow the vehicle to the trooper's district office.

Following a hearing pursuant to CrR 3.5 and 3.6, the trial court held that (1) Fry properly exercised his discretion in impounding the vehicle under RCW 46.20.435(1), and, thus, an inventory search was proper; (2) Fry was justified in detaining Stortroen and conducting a pat–down search of his person upon discovery of the cocaine in the console; (3) Stortroen's initial statements regarding the cocaine on his person were to be suppressed since he had not had *Miranda* warnings; (4) his next statement that "[t]he other stuff in the car is mine, too" was spontaneous and therefore admissible; and (5) at the time of the latter statement, Fry had probable cause to arrest Stortroen.

Following his conviction on stipulated facts, Stortroen appeals.

---

[1]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2]Fry testified each had given oral permission to search previously, but it is not clear at what point that occurred.

The State conceded at oral argument that the warrantless inventory search pursuant to the impound was improper. In order to justify a warrantless inventory search, the State must demonstrate a lawful impound and that the inventory was not a mere pretext for an investigatory search. *State v. Simpson*, 95 Wn.2d 170, 189, 622 P.2d 1199 (1980). Although RCW 46.20.435(1) allows impound of vehicles driven by a driver without a valid license, that provision must be enforced with reference to constitutional requirements and to the circumstances of the case. *State v. Reynoso*, 41 Wn. App. 113, 118–20, 702 P.2d 1222 (1985). None of the circumstances justifying impoundment were present here, *see Simpson*, 95 Wn.2d at 189, and Fry failed to pursue reasonable alternatives to impoundment. *See State v. Hardman*, 17 Wn. App. 910, 567 P.2d 238 (1977), *review denied*, 89 Wn.2d 1020 (1978); *State v. Bales*, 15 Wn. App. 834, 552 P.2d 688 (1976), *review denied*, 89 Wn.2d 1003 (1977).

Nevertheless, the State asserts that the vehicle search can be upheld as a search incident to Kincaid's arrest. If the vehicle search was proper, then the cocaine found in the console justified either probable cause for Stortroen's arrest or was at least enough to create a reasonable suspicion that he was involved in criminal activity, justifying a *Terry*[3] stop and frisk. Stortroen argues that since the trooper had decided to release Kincaid, there was no basis for a vehicle search incident to Kincaid's arrest. Moreover, he contends that regardless of whether the search of the vehicle was proper, the evidence found in the console did not reasonably implicate him.

■ We must initially determine whether Kincaid's arrest was custodial or not. A custodial arrest of an individual committing the misdemeanor traffic offense of driving without a valid license is discretionary with the officer, and is permissible if there are reasonable grounds to believe the defendant will disregard the written promise to appear

---

[3]*See Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

pursuant to the citation. *See State v. Jordan,* 50 Wn. App. 170, 173, 747 P.2d 1096 (1987), *review denied,* 110 Wn.2d 1027 (1988); *State v. McIntosh,* 42 Wn. App. 573, 576–77, 712 P.2d 319, *review denied,* 105 Wn.2d 1015 (1986). Here, it is uncontroverted that there were no indications that Kincaid would fail to appear; indeed, the trooper testified that he was prepared to release Kincaid at the time he commenced his inventory search.[4] There were no grounds for a custodial arrest of Kincaid, nor did Fry have any intention of making such an arrest.[5]

 Where a custodial arrest is not justified, no warrantless search pursuant to that arrest may be upheld. *See State v. Hehman,* 90 Wn.2d 45, 50, 578 P.2d 527 (1978) (search of defendant's person improper where custodial arrest improper); *State v. Carner,* 28 Wn. App. 439, 445, 624 P.2d 204 (1981) (once officers had determined accused would be released, body search no longer justified). Under

---

[4]The dissent correctly points out that it is not the trooper's subjective views, but objective facts, which determine whether reasonable grounds exist to support a belief that the defendant will disregard a promise to appear. Here, there are *neither* the officer's subjective views nor *any* facts in the record which would have justified a custodial arrest.

[5]The dissent mischaracterizes RCW 10.31.100. That statute first establishes the general rule that an officer may arrest for a misdemeanor or gross misdemeanor only when the offense is committed in the officer's presence. The subsections that follow set forth a number of exceptions.

Subsection (3)(e) provides that when an officer has probable cause to believe that the offense of driving while one's license is suspended or revoked has been committed, the officer then "shall have the authority to arrest the person". RCW 10.31.100(3)(e). However, it is significant that this subsection does not specifically authorize a *custodial* arrest. Since the subsection immediately prior *does* specifically authorize custodial arrests in other circumstances, *see* RCW 10.31.100(2), the difference cannot be deemed inadvertent. The omission of words from a statute must be considered intentional on the part of the Legislature. *State v. Roadhs,* 71 Wn.2d 705, 707, 430 P.2d 586 (1967).

Furthermore, the dissent fails to realize that the facts make RCW 10.31-.100(3)(e) moot here because Trooper Fry clearly testified that in this case, he had determined to release Kincaid prior to engaging in his search of the vehicle. At most, RCW 10.31.100(3)(e) gives the officer the authority to arrest; it does not require that he take an offender into custody, where, as here, the officer determines correctly that there is no reason to do so.

similar circumstances, the Ninth Circuit recently held that detention in a police car after a stop for suspicion of driving with a suspended license did not constitute a "full–custody arrest", and therefore a warrantless search of the driver's passenger compartment could not be upheld as incident to an arrest. *United States v. Parr*, 843 F.2d 1228 (9th Cir. 1988). In sum, the search of Kincaid's vehicle cannot be justified as having been made incident to an arrest because the arrest was not custodial.

The State asserts, on the other hand, that this case is controlled by *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986) wherein the court held that a warrantless search of a passenger compartment incident to the driver's arrest was proper. However, *Stroud* involves what is inarguably a *custodial* arrest for theft, and its holding should be limited to such arrests. We hold that *Stroud* should not be extended to noncustodial traffic arrests such as Kincaid's. Rather, the right to search pursuant to noncustodial arrest continues to be controlled by *Hehman* and *Carner*.

■ Since the search of Kincaid's vehicle cannot be upheld as pursuant to an arrest, all of the evidence obtained directly or indirectly through the exploitation of that illegal search, including the contraband discovered in the search of Stortroen's person incident to his arrest and his postarrest statements, must be suppressed. *See United States v. Crews*, 445 U.S. 463, 470–72, 63 L. Ed. 2d 537, 100 S. Ct. 1244 (1980) (illegal arrest); *Wong Sun v. United States*, 371 U.S. 471, 484–88, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) (illegal arrest); *State v. Chrisman*, 100 Wn.2d 814, 819, 676 P.2d 419 (1984) (illegal search); *State v. Gonzales*, 46 Wn. App. 388, 401, 731 P.2d 1101 (1986) (illegal search); *State v. Childress*, 35 Wn. App. 314, 316, 666 P.2d 941 (illegal search), *review denied*, 100 Wn.2d 1031 (1983).

In order for this court to find that Stortroen's second statement was voluntary, the State would have to show that the connection between the illegal search and the statement had "'become so attenuated as to dissipate the taint.'" *See*

*Wong Sun,* 371 U.S. at 491 (quoting *Nardone v. United States,* 308 U.S. 338, 341, 84 L. Ed. 307, 60 S. Ct. 266 (1939)). Stortroen was never given *Miranda* warnings, and his second statement was made moments after the first with no intervening circumstances. Thus, the taint from the illegal search had not dissipated and both of Stortroen's statements must be suppressed.

We therefore reverse and dismiss the charge against Stortroen.

GROSSE, J., concurs.

WILLIAMS, J.* (dissenting)—The majority states that "[t]here were no grounds for a custodial arrest of Kincaid". Majority, at 659. Based on this statement, the majority holds that *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986) is inapplicable. I disagree and dissent.

Kincaid was arrested for driving after his operator's license had been revoked, in violation of RCW 46.20.342. While custodial arrests are not authorized for most traffic offenses, the Legislature has specifically provided for custodial arrests in certain settings. RCW 10.31.100 provides in pertinent part:

A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (8) of this section.

. . .

(3) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:

. . .

(e) RCW 46.20.342, relating to driving a motor vehicle while operator's license is suspended or revoked;

---

*Judge Ward Williams is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

The officer had the authority to make a custodial arrest of Kincaid. Having such authority, he also had the authority to conduct a vehicle search incident to that arrest. *State v. Stroud, supra.* I would hold that the search of the vehicle was legal. Further, I would hold that Stortroen's statement that "[t]he other stuff in the car is mine, too" was admissible. Majority, at 657. The search being legal, there could be no taint of the statement resulting in its inadmissibility.

I respectfully dissent.[6]

Reconsideration denied April 25, 1989.

---

[6]By way of surrebuttal to footnote 4, I would point out that there was probable cause to arrest for driving with a suspended or revoked license, and this gave the officer authority to conduct a search and to seize incriminating evidence. RCW 10.31.100(3)(e); *State v. Stroud, supra.* The majority fails to understand the purpose of the exclusionary rule established in *Wong Sun v. United States,* 371 U.S. 471, 484–88, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), and thereby reduces it to an absurdity. The holding completes the irony formulated by a number of judges who seem to believe that in a criminal case the subjective belief or opinion of the police officer is on trial. Even a police officer should not be rendered culpable for what he thinks.