[No. 9262-3-III.   Division Three.   April 17, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. SALVADOR M. BARAJAS, *Appellant.*

*Victor Lara* and *Schwab, Kurtz & Hurley,* for appellant (appointed counsel for appeal).

*David A. Pitts, Prosecuting Attorney,* and *Thomas Haven, Deputy,* for respondent.

GREEN, A.C.J.—Salvador Barajas appeals his convictions for possession of a controlled substance, cocaine, and carrying a concealed weapon without a permit. He contends the court erred in denying his motion to suppress. We agree and reverse.

On January 20, 1988, Washington State Trooper David Standish reported to the scene of a 1–car accident on Interstate 90 near Ellensburg. Mr. Barajas had lost control of his vehicle on the snow covered road and slid into the median. Although Mr. Barajas had a Washington I.D. card, he did not have a driver's license. Trooper Standish arrested him for driving without a valid operator's license. After advising him of his *Miranda* rights, the trooper frisked him. A search of his pockets revealed some loose money and 18 .380 hollow point bullets covered with a fine white powder that got on the trooper's hands. Mr. Barajas was placed in the patrol car and a tow truck was called to impound the vehicle. During an inventory search of the passenger compartment of the car, the trooper found a loaded 9 mm. pistol under the floor mat on the driver's side and an open eyeglass container containing a baggie of white powder which the trooper believed to be cocaine.[1] A later

---

[1]These facts are largely contained in the findings of the suppression hearing to which no exception was taken. As such, they are verities. *State v. Harris,* 106 Wn.2d 784, 790, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940 (1987).

examination of the money revealed additional cocaine in a $5 bill. Mr. Barajas was charged with possession of a controlled substance in violation of RCW 69.50.401(d) and carrying a concealed weapon in violation of RCW 9.41.050(3). He moved to suppress the evidence.

At the suppression hearing, the trooper testified to these facts. He also stated the primary reason he arrested Mr. Barajas and impounded the car was his failure to have a driver's license. He stated although the car was not a traffic hazard, it is the department's policy to impound when the roads are icy, as they were that day. Mr. Barajas testified he borrowed the car from a friend in Tacoma and denied ownership of the gun and cocaine. The court denied the motion to suppress on the basis the search was incident to a lawful arrest and a valid inventory search. Mr. Barajas was convicted of both charges. He appeals.

Mr. Barajas contends his custodial arrest for not having an operator's license was improper because there were no other circumstances justifying it. Instead, he argues he should have been issued a citation. The State asserts additional circumstances are not needed; consequently, the arrest and the search incident thereto were proper.

In *State v. Hehman,* 90 Wn.2d 45, 47, 578 P.2d 1527 (1978), the court held as a matter of public policy custodial arrest for a minor traffic violation is unjustified, unwarranted, and impermissible if the defendant signs the promise to appear contained in a citation. *See* former RCW 46.64.015. The court refused to uphold the custodial arrest of Mr. Hehman for driving with an expired driver's license in the absence of other circumstances justifying the arrest. *Hehman,* at 50. The court (quoting *ABA Standards Relating to Pretrial Release,* Std. 2.1 (Tent. Draft, Mar. 1968)) stated:

> It should be the policy of every law enforcement agency to issue citations in lieu of arrest or continued custody to the maximum extent consistent with the effective enforcement of the law. A law enforcement officer having grounds for making an arrest should take the accused into custody or, already having done so, detain him further only when such action is

> required by the need to carry out legitimate investigative functions, to protect the accused or others where his continued liberty would constitute a risk of immediate harm or when there are reasonable grounds to believe that the accused will refuse to respond to a citation.

*Hehman,* at 48. The court reasoned this result was supported by the spirit of the statutes under consideration and the trend toward decriminalization of minor traffic offenses. *Hehman,* at 47.

Since *Hehman,* the Legislature has decriminalized most traffic offenses. RCW 46.63.010. It did not decriminalize the offense of driving without a valid operator's license, and it remains a misdemeanor. RCW 46.20.021. Nevertheless, decisions by the other two divisions of this court have held that a traffic infraction designated a misdemeanor, standing alone, is insufficient to justify arrest; other circumstances must be present. *State v. Watson,* 56 Wn. App. 665, 784 P.2d 1294 (1990) (arrest for driving without valid license improper because there were no findings reflecting the presence of other circumstances); *State v. Stortroen,* 53 Wn. App. 654, 769 P.2d 321 (1989) (arrest for driving with revoked license improper without a showing defendant would not appear); *State v. Jordan,* 50 Wn. App. 170, 747 P.2d 1096 (1987) (driving without a license arrest upheld when coupled with no identification and lack of ownership), *review denied,* 110 Wn.2d 1027 (1988); *State v. LaTourette,* 49 Wn. App. 119, 741 P.2d 1033 (1987) (reckless driving arrest upheld coupled with no valid motorcycle endorsement on driver's license, expired license tabs and hostile onlookers), *review denied,* 109 Wn.2d 1025 (1988); *State v. McIntosh,* 42 Wn. App. 573, 712 P.2d 319 (arrest for driving without license upheld where coupled with insufficient identification, lack of ownership of vehicle and suspicious account of evening activities), *review denied,* 105 Wn.2d 1015 (1986). It is the seriousness of the offense and the attending circumstances that justify the arrest rather than whether the violation is designated a misdemeanor or a traffic infraction. As noted in *Hehman,* at 49:

> In all but the most minor violations of traffic or adminis-
> trative regulations, the automatic response of the police
> acting without a warrant usually is to formally arrest the
> accused. See generally LaFave, Arrest 168 *et seq.* (1965).
> Almost no thought is given to the question whether, in any
> given case, there is a *need* for custody or whether, on the
> other hand, society's interests might be just as well or better
> served if the accused were to be issued a citation. It makes
> little sense to jail a man who, when he appears before the
> judge, will be clearly qualified for release without bail.

(quoting the commentary to *ABA Standards Relating to Pretrial Release,* Std. 2.1). Thus, the offense of driving without an operator's license does not necessarily warrant the person be jailed.

Here, the officer testified he arrested Mr. Barajas *solely* because he did not have a driver's license. The State did not offer any evidence that it was concerned Mr. Barajas would not appear if given a citation. Because there were no other circumstances justifying a full custodial arrest, the arrest of Mr. Barajas was unjustified under the cited deci-sions and the subsequent search may not be upheld on the basis it was incident to the arrest.[2]

Notwithstanding, the State argues the search of the vehicle may be upheld as an inventory search in connection with the impoundment. We disagree.

The court in *State v. Simpson,* 95 Wn.2d 170, 189, 622 P.2d 1199 (1980) held a motor vehicle may be im-pounded (1) when the officer has probable cause to believe it was stolen or used in the commission of a felony, (2) as part of the police community caretaking function and nei-ther the defendant nor his spouse or friends are available to remove it, and (3) as part of the police function of enforcing

---

[2] The State argues that the arrest may be upheld under RCW 10.31.100(4) which permits an officer investigating the scene of an accident to arrest the driver of a vehicle if the officer has probable cause to believe the driver has committed a violation of a traffic law in connection with the accident. We decline to accept this argument. The court in *Hehman* considered the forerunner of this statute, RCW 46.64.017, along with its counterparts, RCW 46.64.010, .015 and .030, when it ren-dered its decision. It is illogical to uphold the arrest under one section and not another when the violation remains the same. *See also State v. Stortroen, supra* at 659 n.5.

traffic regulations, if the driver has committed one of the traffic offenses for which the Legislature has specifically authorized impoundment.

The State relies on the third prong of *Simpson* and more specifically RCW 46.20.435(1) which states:

> Upon determining that a person is operating a motor vehicle without a valid driver's license in violation of RCW 46.20.021 . . . a law enforcement officer may immediately impound the vehicle that the person is operating.

In *State v. Reynoso,* 41 Wn. App. 113, 702 P.2d 1222 (1985), the defendant challenged the impoundment and inventory search of his vehicle based upon his arrest for driving without a valid driver's license. Finding none of the circumstances in *Simpson* present, this court held the right to impound based upon a traffic violation is discretionary, stating:

> First, the language of RCW 46.20.435(1) indicates the Legislature did not intend that provision to be enforced indiscriminately without reference to the specific circumstances confronting the law enforcement officer. The use of the word "may" as compared to "shall" suggests those responsible for enforcing RCW 46.20.435(1) are expected to exercise some discretion in deciding whether to impound a vehicle.

*Reynoso,* at 119. Because impoundment involves a governmental taking, we found it must be reasonable in order to satisfy constitutional requirements. *Reynoso,* at 117–19. Whether a particular impoundment is reasonable is determined by the facts of each case. *State v. Greenway,* 15 Wn. App. 216, 219, 547 P.2d 1231 (impoundment of a vehicle following an arrest on a traffic charge is inappropriate when reasonable alternatives to impoundment exist), *review denied,* 87 Wn.2d 1009 (1976); *State v. Bales,* 15 Wn. App. 834, 837, 552 P.2d 688 (1976) (impoundment unlawful for arrest on traffic warrant when defendant requests a friend remove the vehicle), *review denied,* 89 Wn.2d 1003 (1977). *See also State v. Stortroen, supra* (impound after arrest for revoked driver's license unlawful when officer fails to consider other alternatives, such as having car towed to

another location or allowing driver to make other arrangements).

Here, the trooper stated the primary reason he impounded the car was because Mr. Barajas had no driver's license. He admitted the car did not present a traffic hazard and Mr. Barajas' I.D. appeared valid. Even though Mr. Barajas indicated he wanted to get in contact with the owner of the vehicle, the trooper did not discuss this or other alternatives with Mr. Barajas prior to impoundment.

In light of the foregoing, the requirements of *Simpson* were not satisfied and the impoundment was improper. Because both the arrest and the impoundment were improper, the search was unlawful, *Hehman,* at 50; *Reynoso,* at 120, and the motion to suppress should have been granted.

Reversed.

THOMPSON and SHIELDS, JJ., concur.

Review denied at 115 Wn.2d 1006 (1990).