[No. 58462-1.    En Banc.    September 10, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. RICHARD
REDING, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Michele Hauptman, Deputy,* for petitioner.

*Michael J. Trickey* and *Appelwick, Trickey & Spicer,* for respondent.

UTTER, J. — Richard Reding was charged with reckless driving and driving while intoxicated (hereafter DWI). The District Court for Renton decided that the police lacked authority to perform a custodial arrest of Reding for reckless driving under the circumstances of this case. Therefore, it concluded that the evidence of intoxication gathered subsequent to Reding's arrest must be suppressed and his DWI charge must be dismissed. The Superior Court for King County affirmed the District Court's dismissal of Reding's DWI charge. We granted the State's motion for discretionary review and now reverse.

## I

In the early morning hours of April 28, 1990, a King County police officer observed a vehicle traveling at a speed well over the posted speed limit. The officer turned onto the roadway and caught up with the speeding vehicle just as it was entering a turn. The officer testified that the driver of the vehicle was going too fast for the curve, was having trouble negotiating the curve and the roadway, and was going over the center line.

As the officer came out of the curve, he activated his lights. The vehicle in front of him slowed abruptly, and turned off the road at a driveway approximately 500 to 1,000 feet after the curve. The officer followed the vehicle roughly 200 to 300 feet up a dark driveway.

Reding drove up to a house and immediately got out of his car. The officer told him to stop. The officer searched Reding for weapons, placed him under arrest, and put him in the back of his police car. Once Reding was seated in the backseat of the police car, the officer smelled alcohol on his breath. He also noticed Reding's eyes were glassy and his face was flushed and puffy. The officer drove Reding to the Renton Police Department and read him his rights. Reding made statements there and agreed to perform some field sobriety tests.

In a pretrial motion, Reding argued that the evidence of his intoxication gathered after his arrest should be suppressed because the officer lacked authority to make a custodial arrest for reckless driving. The District Court concluded that the officer had probable cause to arrest Reding for reckless driving. It concluded, however, that a *custodial* arrest was not permissible, even for concerns of officer safety. Clerk's Papers, at 51-52. In support of its conclusion, the District Court cited our decision in *State v. Hehman*, 90 Wn.2d 45, 47, 578 P.2d 527 (1978), and its progeny. Accordingly, it suppressed all evidence of intoxication gathered after the arrest and dismissed the DWI

charge. On RALJ appeal, the Superior Court for King County affirmed the District Court's decision, noting that a *Terry* stop would have been sufficient. Clerk's Papers, at 82. We granted the State's petition for direct review and now reverse.

## II

The central issue in this case is the relation between our decision in *State v. Hehman*, 90 Wn.2d 45, 47, 578 P.2d 527 (1978), and subsequent legislation, contained in RCW 10.31-.100 and RCW 46.64.015. We conclude that that legislation codified our rule in *Hehman* that officers generally may not perform custodial arrests for minor traffic offenses. We hold, however, that custodial arrests are permissible for traffic offenses that are not minor, such as reckless driving.

## A

In *Hehman*, a deputy sheriff followed a car with a broken taillight. 90 Wn.2d at 46. After the defendant stopped his car in his passenger's driveway, the deputy approached and asked for the defendant's driver's license. The license had expired a few weeks previously. The officer arrested the defendant, assuming that unless placed in custody he would drive to work. Illegal drugs were found on the defendant during a search incident to arrest. *Hehman*, 90 Wn.2d at 46-47.

In *Hehman*, we held "as a matter of public policy that custodial arrest for minor traffic violations is unjustified, unwarranted, and impermissible if the defendant signs the promise to appear as provided in RCW 46.64.015." 90 Wn.2d at 47. We emphasized the growing trend of decriminalization of traffic offenses, and the use of citations in lieu of arrest. *Hehman*, 90 Wn.2d at 47-48. We failed, however, to specify precisely what constitutes a minor traffic violation.

## B

A year later, the Legislature decriminalized most traffic offenses by Laws of 1979, 1st Ex. Sess., ch. 136, § 2, codified as RCW 46.63.020. Certain traffic offenses, such as reckless

driving, remained criminal. RCW 46.63.020(33). Reckless driving was a misdemeanor at the time of Reding's arrest. Former RCW 46.61.500.[1]

In addition, the Legislature amended RCW 46.64.015 and RCW 10.31.100, to clarify when officers must issue citations and when they may arrest a suspect without a warrant. Laws of 1979, 1st Ex. Sess., ch. 28. After setting forth the procedures for the issuance of traffic citations, RCW 46.64-.015 provides in pertinent part:

> Whenever any person is arrested for any violation of the traffic laws or regulations which is punishable as a misdemeanor or by imposition of a fine, the arresting officer may serve upon him or her a traffic citation and notice to appear in court. . . . The detention arising from an arrest under this section may not be for a period of time longer than is reasonably necessary to issue and serve a citation and notice, except that the time limitation does not apply under any of the following circumstances:
>
> (1) Where the arrested person refuses to sign a written promise to appear in court as required by the citation and notice provisions of this section;
>
> (2) Where the arresting officer has probable cause to believe that the arrested person has committed any of the offenses enumerated in RCW 10.31.100(3), as now or hereafter amended;
>
> (3) Where the arrested person is a nonresident and is being detained for a hearing under RCW 46.64.035.

The relevant portions of RCW 10.31.100 in turn provide:

> A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (8) of this section.
>
> . . . .
>
> (3) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:
>
> . . . .
>
> (c) RCW 46.61.500 or 46.61.530, relating to reckless driving or racing of vehicles . . .[.]

---

[1] Prior to Reding's arrest, the Legislature amended RCW 46.61.500 to make reckless driving a gross misdemeanor. Laws of 1990, ch. 291, § 1. That legislative session ended on March 8, 1990, and the amendment did not become effective until June 7, 1990, 90 days later. Const. art. 2, § 1(c).

These statutes more clearly delineate when officers only have authority to cite and release those who commit traffic infractions.

██ ██ In construing a statute, our paramount duty is to ascertain and give expression to the Legislature's intent. *Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 348, 705 P.2d 776 (1985). In searching for the intent of the Legislature, we " 'must look first to the language of the statute.' " *Service Employees*, 104 Wn.2d at 348 (quoting *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984)). The plain language of RCW 46.64.015 indicates the Legislature intended to codify, rather than change, our holding in *State v. Hehman*, 90 Wn.2d 45, 47, 578 P.2d 527 (1978). Like *Hehman*, RCW 46.64.015 generally requires officers to cite and release those motorists stopped for minor traffic offenses.

██ In addition, both the State and Reding agree that the amendments to RCW 46.64.015 were essentially designed to codify *Hehman*. Brief of Petitioner, at 10; Brief of Respondent, at 19. The legislative history of Laws of 1979, 1st Ex. Sess., ch. 28 also indicates the Legislature intended to codify *Hehman*. In the past, this court has looked to legislative bill reports and analyses to discern the Legislature's intent. *State v. Standifer*, 110 Wn.2d 90, 750 P.2d 258 (1988); *State v. Turner*, 98 Wn.2d 731, 658 P.2d 658 (1983). The House Bill Analysis sets forth our holding in *Hehman* and indicates the purpose of the amendment to RCW 46.64.015 was to codify, not replace, *Hehman*:

> The current *statutes* limit the officer's authority to make a custodial arrest only in the "investigating at the scene of an accident" situation. Recent case law, however, makes this limitation applicable to all "minor" traffic offenses. *State v. Hehman*, 90 Wn.2d 45 (1978). The amendment to RCW 46.64.015 thus codifies this restriction and makes it of general applicability.

House of Representatives Bill Analysis, HB 22, at 2 (Mar. 2, 1979).

The Legislature also provided for limited exceptions to the cite and release procedure for traffic offenses. For example, when a motorist commits one of the more serious traffic offenses listed in RCW 10.31.100(3), the Legislature placed no time limit on detention. RCW 46.64.015(2). A review of the traffic offenses listed in RCW 10.31.100(3) indicates they are more serious than the minor traffic offenses we considered in *Hehman*. In addition to reckless driving, RCW 10.31.100(3) lists several other traffic offenses that were not decriminalized in 1979: failing to take the necessary steps after striking an unattended car or property (a misdemeanor under RCW 46.52.010); failing to take the necessary steps when there is injury or death of a person or damage to an attended vehicle (a class C felony or gross misdemeanor under RCW 46.52.020); driving under the influence of intoxicating liquor or drugs (pursuant to RCW 46.61.502 and .504); driving while driver's license is suspended or revoked (a gross misdemeanor under RCW 46.20.342); or negligent driving (a misdemeanor under RCW 46.61.525). Therefore, for a few types of vehicle-related misconduct which it deemed more serious, the Legislature has given police officers authority to detain motorists for a longer period by making a custodial arrest.[2]

Our conclusion that RCW 46.64.015 and RCW 10.31-.100(3) authorize custodial arrest for nonminor traffic offenses is also consistent with several Washington State Court of Appeals cases. *State v. Reeb,* 63 Wn. App. 678, 682, 821 P.2d 84 (1992) (stating that RCW 10.31.100(3) and RCW 46.64.015 specify "misdemeanor traffic offenses for

---

[2]One could argue that the Legislature should have created fewer exceptions to the mandatory issuance of citations. For example, the American Bar Association in its *Standards for Criminal Justice* § 10-2.2 (2d ed. Supp. 1986) recommends that an officer should be required to issue a citation in lieu of a custodial arrest when a person is charged with a misdemeanor, with certain limited exceptions. But it was the Legislature's prerogative, within constitutional limitations, to decide which types of offenses require a simple issuance of a citation, and which may merit a custodial arrest.

which full custodial arrest upon probable cause is expressly authorized"); *State v. Quintero-Quintero*, 60 Wn. App. 902, 808 P.2d 183 (1991) (holding that RCW 46.64.015 and RCW 10.31.100 authorized the arrest of a person driving with a suspended license); *State v. Feller*, 60 Wn. App. 678, 806 P.2d 776 (holding that failure to have a driver's license did not fall within the situations listed in RCW 46.64.015 for a custodial arrest, and standing alone did not justify arrest), *review denied*, 117 Wn.2d 1005 (1991); *State v. LaTourette*, 49 Wn. App. 119, 741 P.2d 1033 (1987) (reckless driving arrest upheld coupled with no valid motorcycle endorsement on driver's license, expired license tabs and hostile onlookers), *review denied*, 109 Wn.2d 1025 (1988).

Therefore, we conclude that RCW 46.64.015 and RCW 10.31.100(3) authorize Reding's custodial arrest for reckless driving.

## C

Reding raises several counterarguments, none of which are persuasive. Reding's only argument that merits extended discussion is that RCW 10.31.100(3) and RCW 46.64.015 authorize arrests, but not *custodial* arrests. Reding also claims that the 1979 legislation does not apply because RCW 10.31.100 only covers instances where an officer did not witness certain misdemeanors or gross misdemeanors. Finally, he argues that reckless driving by itself is not a sufficient basis for a custodial arrest.

Reding contends RCW 46.64.015 and RCW 10.31.100(3) authorize arrests, but not custodial arrests, for offenses such as reckless driving, relying on *State v. Stortroen*, 53 Wn. App. 654, 659 n.5, 769 P.2d 321 (1989). In *Stortroen*, the defendant was a passenger in a vehicle stopped by police for speeding. After the driver could not produce a license, the officer learned that his license had been revoked for refusing to take a Breathalyzer test. The officer searched the vehicle and found cocaine in an unlocked center console. He then arrested both the driver and the defendant, Stortroen. Stortroen moved to suppress the evidence gathered

during the search. The State argued, among other things, that the officer had authority to arrest the driver and perform a search for driving while his license was revoked.

In *Stortroen*, the court held that an officer could not make a custodial arrest simply because the driver was operating the vehicle with a revoked license. It considered RCW 10.31-.100 in a footnote, but found that it did not give police officers authority to perform a *custodial* arrest. *Stortroen*, 53 Wn. App. at 659 n.5. It noted that RCW 10.31.100(3) provides that an officer "shall have the authority to arrest" a person for offenses such as driving with a revoked license. It contrasted this language with that in the preceding subsection, RCW 10.31.100(2), which states that a police officer "shall arrest and take into custody" an individual who has committed some act of domestic violence. The court felt that such a difference in language could not be inadvertent. Therefore, it concluded that RCW 10.31.100(3) did not authorize custodial arrests.

We find the interpretation of RCW 10.31.100 in *Stortroen* unpersuasive for several reasons. First, the court in *Stortroen* did not mention RCW 46.64.015. The State persuasively argues that RCW 10.31.100 and RCW 46.64.015 taken together provide that officers have authority to perform custodial arrests for reckless driving. Although RCW 10.31.100 may use the word "arrest" in a generic fashion, RCW 46.64.015 answers the separate question of what form a traffic arrest must take. It provides that the detention arising from such an arrest must generally be no longer than "reasonably necessary to issue and serve a citation and notice". RCW 46.64.015. But for certain more serious offenses, such as reckless driving, RCW 46.64.015 does not limit the time of detention. In effect, it authorizes custodial arrests for such offenses.

Second, one of the purposes of the 1979 legislation was to codify *State v. Hehman*, 90 Wn.2d 45, 47, 578 P.2d 527 (1978). In *Hehman*, we dealt with the propriety of custodial arrests. 90 Wn.2d at 47. Therefore, the Legislature in amending RCW 46.64.015 and RCW 10.31.100 must have intended to

clarify the situations where a custodial arrest is appropriate even if it failed to use the word "custodial" in its amendments.

Third, the Legislature added RCW 10.31.100(2) much later, through the Domestic Violence Prevention Act (the Act) in 1984. *See* Laws of 1984, ch. 263, § 19. A more plausible interpretation of the language of RCW 10.31-.100(2) is that by specifically mentioning that an officer must arrest *and* take into custody a person who commits domestic violence, the Legislature wanted to make it absolutely clear that an officer's duty under the Act was to remove the offender from the situation. The inclusion of the word "custody" in RCW 10.31.100(2) does not necessarily mean that custodial arrests are not authorized for the offenses listed in RCW 10.31.100(3).

■ Fourth, as the State points out, the *Stortroen* interpretation of RCW 10.31.100(3) would lead to an unsupportable interpretation of the opening language of RCW 10.31.100. It reads: "A police officer having probable cause to believe that a person has committed or is committing a felony shall *have the authority to arrest* the person without a warrant." (Italics ours.) The word "custodial" is not used. If we followed the logic of the Court of Appeals in *Stortroen*, we would reach the unsupportable result that officers do not have authority to perform custodial arrests for felony offenses. We will not interpret statutes in a manner that yields unlikely, unsupportable, or strained consequences. *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987).

Therefore, we reject Reding's argument that RCW 46.64-.015 and RCW 10.31.100(3) authorize arrests, but not custodial arrests. The Court of Appeals' decision in *Stortroen* is overruled only insofar as it is inconsistent with this opinion.

Reding's other two arguments merit less discussion. Reding claims that the 1979 legislation does not apply because RCW 10.31.100 only covers instances where the officer did not witness certain misdemeanors or gross misdemeanors.

Reding fails to note that RCW 46.64.015, which cross-references the crimes listed in RCW 10.31.100(3), does not limit an officer's authority to arrest to those situations where the crime takes place outside the presence of the officer. In addition, it would be unsupportable if officers had authority to arrest defendants for reckless driving committed outside their presence, but not for reckless driving they witness.

██ Finally, we reject Reding's argument that his arrest for reckless driving is only valid if some additional factor was present or if circumstances indicated he would not make an appearance if issued a citation. The statutes, RCW 46.64.015 and RCW 10.31.100, do not require some additional factor to be present for police to have authority to perform a custodial arrest for reckless driving. Under *Hehman*, the only time additional grounds are necessary for an arrest to be valid is when a minor traffic offense has been committed. 90 Wn.2d at 50; *see, e.g., State v. Barajas*, 57 Wn. App. 556, 789 P.2d 321 (holding that failure to have a driver's license standing alone did not justify arrest), *review denied*, 115 Wn.2d 1006 (1990); *State v. Watson*, 56 Wn. App. 665, 784 P.2d 1294 (arrest for driving without a license upheld when coupled with no identification and lack of ownership), *review denied*, 114 Wn.2d 1028 (1990). Because reckless driving is not a minor traffic violation, we need not inquire whether "other reasonable grounds" existed for the arrest.

Therefore, we find none of Reding's arguments persuasive. We conclude that Reding's custodial arrest was valid, and evidence of intoxication gathered after his arrest is admissible.

### III

██ Reding raises article 1, section 7 of the Washington State Constitution as an alternative basis for our holding in *Hehman* and as a ground for holding his arrest invalid. Our decision in *Hehman*, however, was not based on the state constitution. Our holding was based on "public policy". 90

Wn.2d at 47. We cited existing statutes, model codes, and scholarly commentary extensively to support the policy basis for our decision. We did not cite the state constitution. Because *Hehman* was not decided on constitutional grounds, the Legislature was and still is free to modify or codify the law we set forth in *Hehman*.

█ █ Reding also argues for the first time that Const. art. 1, § 7 should prohibit a custodial arrest under the circumstances of this case. This court has previously declined to consider state constitutional arguments not raised at the trial or appellate court levels. *State v. Canady*, 116 Wn.2d 853, 809 P.2d 203 (1991). In addition, Reding's briefing of the nonexclusive criteria we set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) is insufficient for us to consider a state constitutional argument. *See Snedigar v. Hoddersen*, 114 Wn.2d 153, 167-68, 786 P.2d 781 (1990); *State v. Jones*, 112 Wn.2d 488, 498, 772 P.2d 496 (1989). Therefore, we will not consider whether a custodial arrest for reckless driving violates Const. art. 1, § 7.

IV

We reverse the Superior Court's decision. Because Reding's custodial arrest for reckless driving was valid, the evidence of his intoxication is admissible. We remand this case to the trial court to reinstate the DWI charge.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.