[Nos. 12482-7-III; 12483-5-III.   Division Three.   December 7, 1993.]

THE STATE OF WASHINGTON, *Appellant,* v. JUAN CARLOS
TERRAZAS, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. JACK SCOTTY,
*Respondent.*

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Duane R. Knittle, Deputy,* for appellant.

*Glen P. Warren; Rick L. Hoffman,* for respondents (appointed counsel for appeal).

MUNSON, J. — The State appeals the dismissal of its cases against Juan Terrazas and Jack Scotty.[1] The trial court dismissed both cases after granting the defendants' motions to suppress evidence seized in a search incident to a traffic stop. We affirm.

In the early morning hours of February 28, 1992, Washington State Patrol Trooper John Berends followed a black Z-28 Camaro 2 to 3 miles on Interstate 82, noticing the Camaro cross the lane divider three times. When the Camaro crossed the divider line for a fourth time, Trooper Berends suspected the driver was intoxicated. He activated his emergency lights; the Camaro pulled onto the shoulder of the road; Trooper Berends parked behind the Camaro.

Approaching the car, the trooper noticed there were two passengers in addition to the driver, one in the front seat and one in the back seat. The passenger in the back seat had his hands beneath the blanket which covered his lap. Due to his training and experience, Trooper Berends was aware the concealed hands could have held a weapon. Trooper Berends positioned himself so he could watch the back seat passenger. Trooper Berends told the driver why he had been stopped and asked for a driver's license. The driver stated that he did not have a license. Concerned for his safety because he could not see the rear seat passenger's hands, Trooper Berends asked the driver to step out of the car. The trooper then escorted the driver to a point near his patrol car. Trooper Berends asked the driver his name and birthdate. The driver identified himself as Juan Sandoval. Trooper Berends suspected the driver had given a false name, and patted down the driver looking for weapons or a wallet with identification. He found neither. The driver stated he had no identification. Trooper Berends concluded the driver was not intoxicated, but arrested him for driving without a license and placed him in the back seat of the patrol car. Before arresting the driver, Trooper Berends did not ask any questions regarding his residence, his ties to

---

[1]This man's name appears throughout the record in various ways, *i.e.*, Scotty W. Jack, Scotty Jack, Scott Jack, and Jack Scott. We use the name as it appears on the information.

the community, or his reason for being in that particular loca-. tion. The trooper did not ask his dispatcher to run a computer check on the name Juan Sandoval or the vehicle before the arrest. The trooper did not offer the driver the opportunity to sign a citation to appear in court, because he suspected the driver was using a false name.

Trooper Berends decided to search the Camaro's passenger compartment for weapons. He returned to the Camaro and asked the passengers to step outside to enable him to watch them more closely. Trooper James Brown, a backup officer, arrived on the scene and agreed to watch the passengers. Having previously stopped motorists who denied having any identification, Trooper Berends suspected the driver may have had some identification in the car. He also wanted to check for narcotics. A loaded .357-magnum pistol was immediately found in the back seat, positioned so the back seat passenger could quickly draw and fire. Trooper Berends then removed the keys from the ignition so that he could open the hatchback to check for more weapons. Upon opening the hatchback, Trooper Berends discovered a brick of white powdery substance covered in aluminum foil which was wrapped in three plastic bags. Trooper Berends suspected the substance was cocaine. A field test confirmed that suspicion.

At all times during the contact with the trooper, the defendants appeared calm and answered all of the trooper's questions. At no time did the trooper detect any furtive movements or activity by either the driver or the passengers that suggested a problem or ongoing criminal activity. Trooper Berends testified that the night was cold, and the location was dark. He also stated there was very little traffic at that time.

The driver was ultimately identified as Juan Terrazas. The back seat passenger was identified as Jack Scotty. Both Mr. Terrazas and Mr. Scotty were charged with possession of a controlled substance, cocaine, with intent to deliver and with conspiracy to deliver a controlled substance. The trial court granted the defendants' motions to suppress the State's evidence on the grounds the search was illegal. The cases were then dismissed.

The State contends the search incident to Mr. Terrazas' custodial arrest was valid, and the evidence acquired should not be suppressed. Mr. Terrazas acknowledges if his arrest was valid, then a search incident to that arrest would also be valid. The crucial issue is whether custodial arrest of Mr. Terrazas was proper.

Although *State v. Reding*, 119 Wn.2d 685, 835 P.2d 1019 (1992) involved reckless driving, a more serious violation, the Supreme Court discussed the evolution of the law regarding custodial arrests for minor traffic offenses. The court begins its discussion with its holding in *State v. Hehman*, 90 Wn.2d 45, 578 P.2d 527 (1978). *Reding*, at 688. *Hehman*, at 50, prohibited custodial arrests for minor traffic violations unless the officer had "other reasonable grounds apart from the minor traffic violation itself." The court noted that the year after *Hehman* was decided the Legislature decriminalized most traffic offenses and amended RCW 46.64.015 and RCW 10.31.100. *Reding*, at 688-89. The intent of the Legislature in making these amendments was to codify the court's ruling in *Hehman*. *Reding*, at 690.

RCW 46.64.015 and RCW 10.31.100 now control when an officer may make a custodial arrest for traffic violations. RCW 46.64.015 governs the issuance of citations:

> Whenever any person is arrested for any violation of the traffic laws or regulations which is punishable as a misdemeanor or by imposition of a fine, the arresting officer may serve upon him or her a traffic citation and notice to appear in court. . . . The detention arising from an arrest under this section may not be for a period of time longer than is reasonably necessary to issue and serve a citation and notice, except that the time limitation does not apply under any of the following circumstances:
> (1) Where the arrested person refuses to sign a written promise to appear in court as required by the citation and notice provisions of this section;
> (2) Where the arresting officer has probable cause to believe that the arrested person has committed any of the offenses enumerated in RCW 10.31.100(3), as now or hereinafter amended;
> (3) Where the arrested person is a nonresident and is being detained for a hearing under RCW 46.64.035.

RCW 10.31.100 addresses when an officer may make an arrest without a warrant:

> A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (8) of this section.
>
> . . . .
> (3) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:

Driving without a license is not among the traffic violations listed in RCW 10.31.100(3).

Under these statutes, custodial arrests for traffic violations are limited to situations involving:

> 1. The specific violations listed in RCW 10.31.100(3),
> 2. Refusal to sign the promise to appear in court under RCW 46.64.015(1),
> 3. Nonresident arrestees under RCW 46.64.015(3).

■ However, courts have followed the *Hehman* exception and allowed custodial arrest for minor traffic offenses when there are "other reasonable grounds" in addition to a minor traffic violation. In *Reding*, at 695, the court stated: "[T]he only time additional grounds are necessary for an arrest to be valid is when a minor traffic offense has been committed." The court cites as examples *State v. Barajas*, 57 Wn. App. 556, 789 P.2d 321 (failure to have a driver's license standing alone does not justify arrest), *review denied*, 115 Wn.2d 1006 (1990) and *State v. Watson*, 56 Wn. App. 665, 784 P.2d 1294 (failure to have a driver's license coupled with no identification and no proof of ownership justifies arrest), *review denied*, 114 Wn.2d 1028 (1990). *Reding*, at 695.

Mr. Terrazas was arrested solely for driving without a license. At the time Trooper Berends told Mr. Terrazas he was under arrest and placed him in custody, the trooper had no other grounds for arrest. Trooper Berends testified at the suppression hearing:

Q: What was he arrested for?
A: Not having a driver's license.
Q: That's it? That's it, isn't it?
A: That's it.

Mr. Terrazas was never given an opportunity to sign a promise to appear; he was arrested as soon as he said he had no license. At the time Trooper Berends placed Mr. Terrazas under arrest, he had no facts suggesting that Mr. Terrazas would not appear if cited and released. *State v. Jordan*, 50 Wn. App. 170, 747 P.2d 1096 (1987), *review denied*, 110 Wn.2d 1027 (1988). His mere suspicion that he had been given a false name is insufficient as other grounds to justify a custodial arrest. The trooper did not have dispatch run the name Juan Sandoval through the computer, did not inquire where the driver lived, did not inquire about the driver's connections to the community, and did not attempt to establish ownership of the vehicle before arresting Mr. Terrazas.

■ The State also contends the search of the car was a valid protective frisk to ensure officer safety. Our Supreme Court recently addressed the issue of a protective frisk by police officers in *State v. Collins*, 121 Wn.2d 168, 847 P.2d 919 (1993), noting the frisk exception to the Fourth Amendment warrant requirement is justified by the strong government interest in police officer safety. *Collins*, at 172 (citing *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). The reasonableness requirement of the Fourth Amendment still applies. *Collins*, at 172. The court stated:

> The Fourth Amendment will be satisfied where the following requirements are met: (1) the initial stop must be legitimate; (2) a reasonable safety concern must exist to justify a protective frisk for weapons; and (3) the scope of the frisk must be limited to the protective purpose.

*Collins*, at 173 (citing *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972)). Addressing the requirement of a "reasonable safety concern", the court again cited *Terry*:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent

[person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.

*Collins,* at 173 (quoting *Terry,* 392 U.S. at 27).

In *State v. McIntosh,* 42 Wn. App. 573, 578-79, 712 P.2d 319, *review denied,* 105 Wn.2d 1015 (1986), Division One held "[a] *Terry* stop and frisk may extend into the car if there is a reasonable suspicion that the suspect is dangerous and may gain access to a weapon in the vehicle."

The State argues that Trooper Berends had a reasonable suspicion Mr. Scotty was dangerous and may have had access to a weapon because his hands were concealed beneath the blanket. Recognizing the very real dangers faced by our police officers, we do not disparage the concerns they have for their own safety. However, Trooper Berends was aware of only a potential hazard; he did not have any articulable suspicions that Mr. Scotty personally was dangerous or may have had access to a weapon.

While Trooper Berends' fears may have been justifiable, the fact that Mr. Scotty had a blanket over his lap may be explained by the fact it was a cold winter night. Trooper Berends testified Mr. Terrazas, Mr. Scotty, and the other passenger were all cooperative. They did not make any nervous or furtive gestures or make any statements that would lead him to suspect they were armed or dangerous. Based on the totality of the circumstances, Trooper Berends' suspicion that Mr. Scotty may have been concealing a weapon was not reasonable. The protective sweep of the car was not justified. Consequently, the trial court was correct in suppressing the evidence acquired as a result of the search.

Affirmed.

SWEENEY, A.C.J., and CLARKE, J. Pro Tem., concur.

Review denied at 123 Wn.2d 1028 (1994).