[No. 13977-8-III.   Division Three.   December 28, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT LEE HENRY, *Appellant*.

---

[16]RAP 2.5(a)(3). *See, e.g., Scott,* 110 Wn.2d at 685.

*Gary C. Hugill*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Carrie L. Runge, Deputy*, for respondent.

THOMPSON, C.J. — Robert Lee Henry appeals his conviction for possession of a controlled substance (methamphetamine). *See* RCW 69.50.401(d). He contends the superior court erred in admitting evidence obtained in a warrant-

less search of his person after he was stopped for traffic infractions. We reverse.

On the evening of January 25, 1994, Benton County Sheriff's Sergeant Ron Sabin noticed Mr. Henry's vehicle parked directly in front of a Benton City Pik-a-Pop store. He was suspicious that a robbery might have been taking place:

> [A]ny time a vehicle is stopped in front of a door, I would check. If I was going to rob that store, I would park there, so I could get away real quick, so I checked him.

The record does not disclose what Sergeant Sabin meant when he testified he "checked" Mr. Henry. Twenty minutes later, at about 10:30 P.M., Deputy Shon Small stopped Mr. Henry's vehicle for failure to stop and failure to signal. Deputy Small noticed a police radio scanner on the front passenger seat of the vehicle, and asked Mr. Henry if he was involved in law enforcement or connected with fire personnel. Mr. Henry said he was not.

Deputy Small asked Mr. Henry for his driver's license, vehicle registration and proof of insurance. Mr. Henry appeared not to be sure where the documents were, but eventually found them. Deputy Small testified Mr. Henry had glassy eyes, moved slowly, and acted "kind of like he was in some type of a daze or something of that nature."

Deputy Small asked Mr. Henry whether his vehicle had been used in recent burglaries or drug transactions in the area; Mr. Henry denied involvement. Deputy Small told Mr. Henry he could refuse, but requested permission to search the vehicle. Mr. Henry consented, and got out of the vehicle.

Deputy Small testified that after getting out of the vehicle, Mr. Henry looked "real nervous. He was looking down at the floorboard like — I don't know what he was looking for, but it made me nervous. As a matter of fact even the hairs started to stand on the back of my head because I was kind of concerned." Deputy Small called Sergeant

Sabin for backup, and asked if he could search Mr. Henry's person "for officer safety purposes." Deputy Small testified he told Mr. Henry he "was looking for weapons or anything else he had on him." The deputy testified:

[H]e acted very nervous about it and started really raising my suspicions up, and I figured he had a multitude of things, maybe a weapon, which is my main concern. Who knows, maybe some drug paraphernalia, something of that nature. Deputy Small testified on cross-examination:

Q. . . . Just to summarize, it would be fair to say you stopped Mr. Henry here, my client, on a traffic matter?

A. Correct.

Q. And you just sort of felt nervous or some feeling of anxiety as the whole matter progressed; is that correct?

A. Correct.

Q. That nervousness and anxiety wasn't anything you could point your finger on and say this is the reason he was nervous; do you understand what I mean?

A. Not really.

Q. You didn't see any particular action that Mr. Henry made, such as throwing something out of the car or deliberately reaching into his pocket or throwing something over the back seat of the car as you approached, anything of that nature?

A. No, sir.

Q. That's what I mean. There is nothing you can say this particular action or this gesture was the reason I started feeling nervous and worried about things; is that fair to say?

A. Correct.

Q. And likewise there wasn't any reason as your conversation with Mr. Henry progressed to think that any specific reason — I mean to think that he had just committed a crime?

A. Well, I just knew he was a lot more nervous than the majority of people I do stop, and like I say I have been

involved with law enforcement now for six years between working at different places, two years as a Reserve down at Prosser as well as four years here.

I believe I have a very good feel for people, you know, upon contacting them. Yes, I have been pulled over before in my past before and I am nervous, too, but generally it will be for a traffic violation, like normal people.

Q. I appreciate that but it would be fair to say that basically you just — you didn't like the way things were going or your reaction or his reactions to the stop so forth just sort of perked your ears up, right?

A. Correct. Yeah, him looking at the floorboard.

Q. But again you didn't have any reason — any specific reason you can point to to think this man had just been involved in a crime? Let me be more specific. You didn't have anything like a police report saying there was a burglary with a car that was somewhat similar to this man's — the car this man was driving, I mean?

A. Okay. No, sir, I didn't.

Q. You ran a check on his driver's license — driver plate I presume and didn't find any warrants out for him and so forth?

A. Correct.

Deputy Small and Sergeant Sabin testified Mr. Henry consented to the search. Deputy Small testified he found two knives in Mr. Henry's pockets. When he began to search the left pocket of his jacket, Deputy Small testified, Mr. Henry said, "That's enough. Don't touch that," or "Don't touch me there." Deputy Small and Sergeant Sabin testified Mr. Henry then began to perspire heavily, appeared to be upset, turned pale, and complained of being sick and nauseous. Deputy Small read Mr. Henry his *Miranda* rights, which Mr. Henry said he understood and waived.

Deputy Small testified he then told Mr. Henry: "Hey, you know, for my own safety I would like to pat you

down." The deputy testified he was "looking for weapons or anything else he had on him." Deputy Small testified Mr. Henry then said: "Okay, you can go ahead an[d] pat me there. Just feel on the outside."

Deputy Small patted the outside of the jacket pocket, and felt two hard objects. He recognized one object as a drug pipe, but was concerned the other, oval-shaped object was a small gun. Mr. Henry told Deputy Small the object was "a lighter or something." Deputy Small reached into the pocket and found a pipe, a lighter, and two plastic baggies containing orange powder. Officers later found $840 in cash in Mr. Henry's wallet.

Mr. Henry testified he was not upset, but was "tired and frustrated" because he had worked all day and had spent the evening working on a friend's water heater. He agreed he consented to the search of his vehicle, but denied he gave — or was even asked — for permission to search his person or jacket. Mr. Henry testified when he got out of the vehicle, Deputy Small "started to pat me down and then I stepped back and asked him, I am not the car, you know."

Mr. Henry moved to suppress the evidence seized in the search. After a hearing on April 1, 1994, the court found Mr. Henry consented to Deputy Small's search of both the vehicle and his person. The court also concluded "[t]here were sufficient, yet unintentional actions on the part of the defendant to allow Deputy Small to conduct a search of the defendant's coat pocket." The court denied the suppression motion.

A jury found Mr. Henry guilty, and he was sentenced to 30 days.

Mr. Henry contends the court erred in declining to suppress evidence discovered in the warrantless search of his person. We agree.

■ Deputy Small's initial stop of Mr. Henry's vehicle was a seizure, and, to be lawful, must have been justified in its inception and reasonable in scope. *State v. Tijerina,*

61 Wn. App. 626, 628-29, 811 P.2d 241 (citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Williams*, 102 Wn.2d 733, 739, 689 P.2d 1065 (1984)), *review denied*, 118 Wn.2d 1007 (1991).

Here, Deputy Small's initial stop was based on Mr. Henry's failure to stop, RCW 46.61.050(1), and failure to signal, RCW 46.61.310, both of which are traffic infractions subject to $35 fines. IRLJ 6.2(d); *see State v. Cole*, 73 Wn. App. 844, 847-48, 871 P.2d 656, *review denied*, 125 Wn.2d 1003 (1994). RCW 46.61.021 authorizes officers to detain persons for traffic infractions "for a reasonable period of time necessary to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction."

Deputy Small therefore was justified in stopping Mr. Henry for the two traffic infractions. The primary issue in this case, however, is whether the detention exceeded the legitimate scope of such a stop.

In *Tijerina*, 61 Wn. App. at 628, state patrol officers stopped a car on Interstate 90 near Ritzville. The driver and passenger produced valid identification, and the troopers decided not to issue a citation. *Id.* at 628. However, one trooper noticed several small bars of soap in the glove box. *Id.* at 628. Noting the occupants appeared to be Hispanic, and based on his alleged knowledge that Hispanics were involved in drug transactions in Spokane motels, the trooper asked if there were guns or drugs in the car, and then asked for and received permission to search the car. *Id.* at 628. The court held that the trooper's further detention, after deciding not to issue a citation, "had to be based on articulable facts from which the [trooper] could reasonably suspect criminal activity." *Tijerina*, 61 Wn. App. at 629 (citing *State v. Gonzales*, 46 Wn. App. 388, 394, 731 P.2d 1101 (1986)).

Similarly here, although Deputy Small initially stopped Mr. Henry for two traffic infractions, the officer's testimony makes it clear his focus quickly shifted to

something else. Noticing a police radio scanner on the passenger seat, the officer asked Mr. Henry if he was involved in law enforcement or connected with fire personnel. The officer also asked if Mr. Henry's vehicle had been used in recent burglaries or drug transactions in the area. The record does not indicate whether Deputy Small ever issued the traffic citations, and although Mr. Henry produced valid identification documents, the officer immediately turned his attention to other suspicions. The stop escalated beyond a routine traffic infraction investigation, and exceeded the legitimate scope of such a stop. *See Cole*, 73 Wn. App. at 850.

The State argues the detention was a legitimate stop pursuant to *Terry* and was further justified by Mr. Henry's consent.

■ In *Tijerina*, this court considered the validity of a consent to search given in similar circumstances:

> In evaluating the effect of the consent, we must consider (1) the temporal proximity of the detention and subsequent consent, (2) the presence of significant intervening circumstances, (3) the purpose and flagrancy of the official's conduct, and (4) the giving of *Miranda* warnings. *Taylor v. Alabama*, 457 U.S. 687, 690, 73 L. Ed. 2d 314, 102 S. Ct. 2664 (1982); *State v. Jensen*, 44 Wn. App. 485, 490, 723 P.2d 443, *review denied*, 107 Wn.2d 1012 (1986).

*Tijerina*, 61 Wn. App. at 630.

Here, Deputy Small's request to search Mr. Henry's vehicle was simultaneous with the original detention; there were no significant events that intervened between the detention and the consent. Although Deputy Small articulated some vague suspicions, the purpose of his request was unclear, and he had not administered the *Miranda* warnings to Mr. Henry at that time. Mr. Henry's consent did not justify the extended detention.

■ Under *Terry*, a person may be detained briefly for questioning if the officer reasonably suspects a person of criminal activity. *State v. Watkins*, 76 Wn. App. 726, 729,

887 P.2d 492 (1995) (citing *State v. Rice*, 59 Wn. App. 23, 26, 795 P.2d 739 (1990)). Asking a driver to get out of a car does not convert the stop to a custodial arrest. *Watkins*, 76 Wn. App. at 729 (citing *State v. Thornton*, 41 Wn. App. 506, 512, 705 P.2d 271, *review denied*, 104 Wn.2d 1022 (1985)). In addition to this limited questioning, *Terry* also permits an officer to conduct a limited search for weapons "if the officer has reasonable grounds to believe the person to be armed and presently dangerous." *State v. Hudson*, 124 Wn.2d 107, 112, 874 P.2d 160 (1994) (citing *Terry*, 392 U.S. at 29; *State v. Hobart*, 94 Wn.2d 437, 441, 617 P.2d 429 (1980)). Such a protective search must be objectively reasonable, based on the officer's subjective perception of events. *State v. Coutier*, 78 Wn. App. 239, 896 P.2d 747 (1995), *review denied*, 128 Wn.2d 1019 (1996).

Here, Deputy Small noticed Mr. Henry had glassy eyes, moved slowly, and acted "kind of like he was in some type of a daze or something of that nature." However, his testimony indicated his reason for escalating the detention was not because he suspected Mr. Henry of being under the influence of alcohol or drugs, or that he was otherwise incapable of driving safely. Indeed, the officer testified Mr. Henry's nervousness made the "hairs start[] to stand on the back of my head," and he requested consent to search "for officer safety purposes."

█ However, it is not unusual for drivers to be unable immediately to find their vehicle's registration and proof of insurance. And "most persons stopped by law enforcement officers display some signs of nervousness." *State v. Barwick*, 66 Wn. App. 706, 710, 833 P.2d 421 (1992). Although Deputy Small testified, based on his experience, that Mr. Henry appeared more nervous than normal, the officer on cross-examination was not able to articulate a basis for his conclusion. Therefore, at the time Deputy Small escalated the routine traffic stop into a *Terry* stop, he had no objectively reasonable basis for the search. The detention was not a legitimate *Terry* stop.

█ Deputy Small hinted at what may have been his

real motivation for the detention when he testified he told Mr. Henry he "was looking for weapons *or anything else he had on him*" and "I figured he had a multitude of things, maybe a weapon, which is my main concern. *Who knows, maybe some drug paraphernalia, something of that nature.*" (Emphasis ours.) A recent series of decisions from this court has confirmed the principle that, without sufficient justification, police officers may not use routine traffic stops as a basis for generalized, investigative detentions or searches. *Coutier*, 78 Wn. App. 239; *Cole*, 73 Wn. App. 844; *State v. Terrazas*, 71 Wn. App. 873, 863 P.2d 75 (1993), *review denied*, 123 Wn.2d 1028 (1994); *Barwick*, 66 Wn. App. 706; *Tijerina*, 61 Wn. App. 626. Here, although Deputy Small justifiably stopped Mr. Henry for two traffic infractions, he converted the routine traffic stop into a more intrusive detention for which he had no objective basis.

The conviction is reversed, and the case is remanded for further proceedings consistent with this decision.

MUNSON and SWEENEY, JJ., concur.