[No. 39215-8-I.   Division One.   November 24, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY L. LARSON, *Appellant*.

---

[35]118 Wn.2d at 781-82 (quoting *State v. Lessley*, 59 Wn. App. 461, 464-65, 798 P.2d 302 (1990)).

*Eric Broman* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Charles F. Blackman* and *Seth Aaron Fine, Deputies*, for respondent.

BECKER, J. — During a *Terry*[1] stop involving a vehicle, an officer who reasonably suspects the presence of a weapon inside the vehicle may conduct a limited protec-

---

[1]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

tive search of the passenger compartment as needed to assure no one within the car has access to a weapon during the stop.[2] We hold the state constitution similarly permits a limited protective search during a stop for a minor traffic infraction.

The trial court's undisputed findings of fact establish that State Trooper David Scherf observed the defendant, Larry Larson, speeding in his pickup truck on Interstate 5 near Lynnwood. With lights flashing, Trooper Scherf maneuvered directly behind Larson, but Larson neither pulled over nor slowed down. Trooper Scherf observed Larson leaning forward and making movements toward the floorboard of his truck. After traveling some distance through a construction zone, Larson left the freeway and eventually stopped in a hotel parking lot.

At Trooper Scherf's direction, Larson got out of his truck. Trooper Scherf placed himself between Larson and the truck, patted down Larson's outer clothing, and was careful not to allow Larson back in the truck. Trooper Scherf then stuck his head in the cab of the truck through the open door to visually inspect the area around the driver's seat. It is undisputed that this intrusion and visual inspection inside the truck cab constituted a warrantless search.

In a pocket hanging down in front of the driver's seat, Trooper Scherf saw a syringe, blackened spoon and a cotton ball. Upon picking them up, he saw and opened a paper bindle containing heroin. Trooper Scherf arrested Larson for drug possession. Larson waived his *Miranda*[3] rights and admitted the heroin was his.

Trooper Scherf testified at the suppression hearing that if he had not found the drug-related items, he would have had Larson get back in the truck and would have proceeded with the usual activities involved in a traffic stop for speeding.

---

[2]*State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986).

[3]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The trial court denied Larson's motion to suppress evidence of the contraband discovered when the trooper put his head inside the open door of the truck. Larson was convicted for possession of a controlled substance in a bench trial on stipulated facts. Appealing his conviction, Larson assigns error to the order denying his motion to suppress.

■ We first reject the State's attempt to justify the search as incident to arrest.[4] Custodial arrests are ordinarily not permitted for minor traffic infractions such as speeding.[5] The State contends Trooper Scherf had probable cause to make a custodial arrest for conduct other than speeding, such as driving while intoxicated or failing to obey the trooper's request to stop.[6] But the State did not make this argument in the trial court. We will not affirm on the basis of a theory argued for the first time on appeal.[7] We address only the issue whether the search was justified by the concern for officer safety.

The United States Supreme Court, in *Michigan v. Long*,[8]

---

[4] *See State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986).

[5] *State v. Hehman*, 90 Wn.2d 45, 47, 578 P.2d 527 (1978); RCW 46.63.020; *State v. Watson*, 56 Wn. App. 665, 666, 784 P.2d 1294 (1990) (collecting cases upholding an arrest for a traffic infraction when circumstances in addition to the infraction justify a custodial arrest); *State v. Reding*, 119 Wn.2d 685, 695, 835 P.2d 1019 (1992).

[6] RCW 10.31.100(3)(d); RCW 46.61.022; *See* RCW 10.31.100(3)(d) (authorizing officer to arrest persons suspected of driving while intoxicated) RCW 46.61.021, .022 (misdemeanor to fail to obey officer); RCW 10.31.100 (officer authorized to arrest persons who commit misdemeanors in presence of officer).

[7] *Cf. State v. Hudson*, 79 Wn. App. 193, 194 n.1, 900 P.2d 1130 (1995), *affirmed*, 130 Wn.2d 48, 921 P.2d 538 (1996) (affirming trial court on alternate theory, which had been presented to trial court).

[8] *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). In *Long*, two police officers observed a car swerve into a ditch. They investigated and found Long, alone, outside his car. When the officers asked for his registration, Long started walking back to his car. The officers followed, and upon seeing a knife in the car on the driver's side, they performed a protective patdown of Long, but found no weapons. One officer noticed something protruding under an armrest of the car. He lifted the armrest and found a pouch of marijuana. The United States Supreme Court affirmed Long's conviction for possession of marijuana, holding the search was valid under the Fourth Amendment and *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

upheld as valid under the Fourth Amendment a search involving similar facts. Under the Fourth Amendment to the United States Constitution, it is clear that a reasonable concern for officer safety, sufficient to justify the search of an automobile incident to a *Terry* stop, may arise even in circumstances where a lone driver is outside the automobile and has no immediate access to the car.[9] Larson relies instead on the Washington State Constitution, art. 1, § 7, to argue the search of his truck violated his right not to be disturbed in his private affairs without authority of law.

■ As our Supreme Court recently observed in *State v. Hendrickson*,[10] it is well-settled that art. 1, § 7 of the Washington State Constitution provides greater protection to individuals against warrantless searches of their automobiles than does the fourth amendment to the United States Constitution. Accordingly, we reject the State's contention that Larson's somewhat cursory *Gunwall*[11] analysis is insufficient to justify an independent analysis under the state constitution. As in *Hendrickson*, our inquiry is not whether the state constitution provides greater protection; it is whether the greater protection provided by the state constitution makes this particular search unlawful.

■ Under the Washington Constitution, a valid *Terry* stop may include a search of the interior of the suspect's vehicle when the search is necessary to officer safety.[12] A protective search for weapons must be objectively reason-

---

[9]*Michigan v. Long*, 463 U.S. at 1032.

[10]*State v. Hendrickson*, 129 Wn.2d 61, 70 n.1, 917 P.2d 563 (1996).

[11]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[12]*State v. Kennedy*, 107 Wn.2d 1, 12, 726 P.2d 445 (1986). *Cf. State v. Terrazas*, 71 Wn. App. 873, 879, 863 P.2d 75 (1993) (*Terry* stop improperly extended into car where officer had no articulable suspicion that any occupant was dangerous or had access to a weapon).

able, though based on the officer's subjective perception of events.[13]

The trial court concluded the search was necessary to officer safety. The court found Trooper Scherf "had reason to believe Defendant might be armed following the bending motion he had observed in the truck, and the length of time it took Defendant to pull over." Larson contends his movements inside the car, even if they did give rise to a reasonable concern for officer safety, did not justify a search inside the truck once he had stepped outside and no longer had immediate access to the vehicle.

Our Supreme Court's opinion in *State v. Kennedy*,[14] another case involving a driver's suspicious movements inside a car, is critical to analysis of this issue under the Washington State Constitution. The question before the *Kennedy* court was the validity of a vehicle search incident to a *Terry* stop. A police officer observed Kennedy come out of a suspected marijuana dealer's house, get into a car, and drive off. Based on an informant's tip, the officer reasonably suspected Kennedy had just purchased marijuana inside the house. Lacking probable cause to arrest, the officer decided to stop Kennedy for the purpose of investigation.

After signaling Kennedy to pull his car to the side of the road, the officer saw Kennedy lean forward as if to put something under the driver's seat. Once both cars stopped, the officer approached Kennedy and asked him to get out. Kennedy got out and moved to the rear of the car. A passenger remained in the front seat. The officer looked in the car, reached under the front seat, and found a bag of marijuana. Kennedy was charged and convicted for possession of the marijuana.

The court first concluded the stop of the vehicle was

---

[13]*State v. Henry*, 80 Wn. App. 544, 552, 910 P.2d 1290 (1995).

[14]*State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986).

lawful under CONST. art. I § 7 and *Terry v. Ohio*,[15] as a detention for the purpose of investigation. The court then defined the scope of a vehicle search incident to a *Terry* stop, and held that it could not be as intrusive as a search incident to arrest:

> In contrast to an arrest, a *Terry* stop does not present the same dangers to the police officer or to evidence of a crime. No evidence could be lost, because, without some further predicate, no evidence could be seized. Because the risk to a *Terry* suspect is substantially less than that presented to a *Stroud*[16] arrestee, the risk to the officer is correspondingly reduced. Given the absence of a state interest in evidence and this reduced risk to the officer, the degree of intrusion into an admittedly private area—the passenger compartment of a car—should be reduced. To hold otherwise would make the scope of a *Terry* stop coterminous with that of an arrest, a conclusion we find unsupportable under article 1, section 7 of the Washington Constitution. Moreover, raising the stakes of a *Terry* stop would unnecessarily increase the volatility in that police-citizen encounter.[17]

The court concluded the scope of a search incident to a *Terry* stop of a vehicle was constitutionally limited to that "sufficient to assure the officer's safety." [18] An officer accordingly may search for weapons "within the investigatee's immediate control."[19] The scope of the search may expand to the vehicle's interior in the area of the front seat if a passenger remains inside the car:

> We also recognize that such a limited search applies to any

---

[15]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[16]*State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986) (Const. art. I, § 7 does not prohibit police from conducting a limited search of the passenger compartment of a vehicle incident to a valid custodial arrest).

[17]*State v. Kennedy*, 107 Wn.2d at 12.

[18]*State v. Kennedy*, 107 Wn.2d at 12. *See also State v. Henry*, 80 Wn. App. 544, 553, 910 P.2d 1290 (1995) (without sufficient justification, police may not use routine traffic stops as a basis for generalized, investigative detentions or searches).

[19]*State v. Kennedy*, 107 Wn.2d at 12.

companion in the car because that person presents a similar danger to the approaching officer. The front seat of the car is in the immediate control of a passenger seated next to the driver. Consequently, a search in that area to discover whether the suspect's furtive gesture hid a weapon under the front seat is similar to a *Terry* frisk where an officer may frisk a suspect to protect himself from danger.[20]

In the present case, as in *Kennedy*, the officer observed the driver making furtive movements as if placing a weapon under the seat. As in *Kennedy*, the trooper, after stopping the vehicle, had the driver step outside where he could be prevented from reaching back into the car while they continued their discussion. But unlike the facts in *Kennedy*, there was no other passenger in the car. Larson asks us to find this distinction dispositive, and hold Trooper Scherf's intrusion into the interior of the truck was unnecessary to assure his safety because even if there was a weapon inside, no one had access to it.

We do not find the distinction dispositive because here the stop was made for a different purpose than in *Kennedy*. In *Kennedy*, the purpose of the stop was to conduct an investigation. In the present case, the purpose of stopping Larson was to cite him for speeding, a minor traffic infraction. In stopping a vehicle for a minor traffic infraction, a police officer is authorized and expected to "detain that person for a reasonable period of time necessary to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction."[21] The certificate of license registration, by law, must be car-

---

[20]*State v. Kennedy*, 107 Wn.2d at 12.

[21]Former RCW 46.61.021(2). *See also State v. Tijerina*, 61 Wn. App. 626, 629, 811 P.2d 241 (1991) (a request to see license and registration is reasonably related to a traffic stop for crossing the fog line). RCW 46.61.021(2) was amended in 1997 to add warrant checks to the list of authorized activities. LAWS OF 1997, 1st Spec. Sess., ch. 1.

ried in the vehicle for which it is issued.[22] Typically, this document is kept within the passenger compartment rather than on the driver's person. It was therefore reasonable for Trooper Scherf to anticipate that as he continued to carry out the traffic stop, sooner or later he would have to permit Larson to return to the truck to retrieve documents. Because Larson would then have had access to any weapon he might have concealed inside before getting out, the protective search to discover such a weapon was not unreasonably intrusive.

As in *Kennedy*, the purpose of such a search is "to discover whether the suspect's furtive gesture hid a weapon."[23] The scope of the search, therefore, is limited to the area of the vehicle defined by the suspicious movements observed by the officer. It is not coterminous with a search incident to arrest.[24]

Because Trooper Scherf's concern for his safety was objectively reasonable, he acted lawfully in searching inside the truck, and his search was properly limited in scope. The drug paraphernalia was in plain view.[25] The trial court did not err in refusing to suppress the evidence.

Affirmed.

BAKER, C.J., and GROSSE, J. concur.

---

[22]RCW 46.16.260.

[23]*State v. Kennedy*, 107 Wn.2d at 12.

[24]*Cf. State v. Kennedy*, 107 Wn.2d at 12.

[25]*See Kennedy*, 107 Wn.2d at 10 (distinguishing "plain view" from "open view").